FREEMAN UNITED COAL MINING COMPANY, Petitioner,

v.

BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR, William Doty and Director, Office of Workers' Compensation Programs United States Department of Labor, Respondents.

No. 89–2307.

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1990.

Decided July 23, 1991.

Rehearing Denied Oct. 3, 1991.

Louis R. Hegeman, Jay D. Stein, Louis D. Bernstein (argued), Gould & Ratner, Chicago, Ill., for Freeman United Coal Min. Co.

Howard B. Eisenberg (argued), Southern Illinois University, School of Law, Carbondale, Ill., for William Doty.

Donald S. Shire, Sol. Gen., Dept. of Labor, Washington, D.C., John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, Ill., Rae Ellen Frank James, Sylvia T. Kaser, Dept. of Labor, Black Lung Div., Jeffrey J. Bernstein, Sol. Gen., Washington, D.C., for Director, Office of Workers' Compensation Programs.

Linda M. Meekins, Benefits Review Bd., Dept. of Labor, Washington, D.C., for Benefits Review Bd.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and SNEED, Senior Circuit Judge.*

COFFEY, Circuit Judge.

Freeman United Coal Mining Company appeals a decision of the Benefits Review Board reversing an Administrative Law Judge's denial of benefits to William Doty under the Black Lung Benefits Act on the ground that Freeman failed to rebut the 20 C.F.R. § 727.203 interim presumption entitling Doty to benefits. We agree with the Benefits Review Board that the Administrative Law Judge erred, but we base our decision on different grounds.

## I. FACTS

Freeman United Coal Company employed William Doty as a laborer and electrician from 1934 until his retirement in 1977. Doty was born on July 18, 1912, and has never smoked. He testified before the Administrative Law Judge ("ALJ") that he was exposed to coal dust in his work and experienced difficulty breathing during his last three years on the job.

Since we decide this case on procedural grounds, our statement of facts will be limited primarily to the procedural history. Doty filed his complaint for black lung benefits with the Department of Labor on August 1, 1977. On March 27, 1979, the Department of Labor's Division of Coal Mine Workers' Compensation sent Freeman United Coal Mining Company a Notice of Initial Finding stating that the Department had found "that the claimant is entitled to benefits" and that Freeman United Coal is "liable to pay benefits." Freeman filed its controversion of the initial finding on a Department of Labor "Operator Response" form dated May 1, 1979, five days more than the thirty days from the date of the Notice of Initial Findings that the regulations permit for filing a controversion of liability,[1] but within the thirty-seven days permitted for filing a controversion through the U.S. mail.[2]

The parties[3] held an informal conference regarding Doty's claim on January 16, 1980 pursuant to 20 C.F.R. § 725.416.[4] Freeman claims that its non-lawyer representative, Harry Treadwell, requested during the hearing that the Acting Deputy Commissioner send the Memorandum of Conference to him at Freeman's West Frankfort, Illinois address. But the Acting Deputy Commissioner's Memorandum of Conference recommending that Doty receive black lung benefits was sent to the atten-

---

* The Honorable Joseph T. Sneed, of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

1. The thirty day limitation for the responsible operator to file its objection to liability is contained in 20 C.F.R. § 725.413(a) which reads, in relevant part:

 "Within 30 days after receipt of notification issued under § 725.412, unless such period is extended by the deputy commissioner for good cause shown, or in the interest of justice, a notified operator shall indicate an intent to accept or contest liability."

2. 20 C.F.R. § 725.311(c) provides that "[w]henever any notice, document, brief or other statement is served by mail, 7 days shall be added to the time within which a reply or response is required to be submitted."

3. The conferees included a representative from the Acting Deputy Commissioner's office, William Doty, Freeman's representative, Harry Treadwell, and Joe Angelton, a United Mine Workers of America official.

4. 20 C.F.R. § 725.416(a) provides:

 "At the conclusion of the period permitted by § 725.414 for the submission of evidence, the deputy commissioner may conduct an informal conference in any claim where it appears that such conference will assist in the voluntary resolution of any issue raised with respect to the claim. The conference proceedings shall not be stenographically reported and sworn testimony shall not be taken."

tion of Freeman's attorney at the address included on Freeman's Operator Response form. Freeman received the Memorandum in its Chicago office on May 19, 1980, but failed to send a letter to the Acting Deputy Commissioner rejecting her recommendation until June 26, 1980, more than thirty days after the date of the Acting Deputy Commissioner's recommendation. *See* 20 C.F.R. § 725.417(d).[5] Upon receipt of Freeman's rejection of the recommendation, the Deputy Commissioner proceeded to issue a proposed decision on July 11, 1980, awarding benefits to Doty effective August 1, 1977 (without addressing the untimeliness of Freeman's response).

The Labor Department regulations permit a proposed decision of the Deputy Commissioner to be appealed to an ALJ within 30 days of issuance.[6] Freeman asserts that it sent the Deputy Commissioner a letter dated July 22, 1980, rejecting the proposed findings of fact and conclusions of law and requesting that the claim be forwarded to the Office of Administrative Law Judges for a formal hearing, but Doty claims he never received it. The problem is that this alleged letter is not now nor was it ever made part of the Labor Department's record, and it is impossible to verify whether the document was actually sent. Doty subsequently began receiving interim payments from the Black Lung Trust Fund until such a time as liability could be enforced against Freeman.

More than a year later, on October 20, 1981, Donald Shire, Associate Solicitor for Employee Benefits of the Department of Labor's Division of Coal Mine Workers' Compensation addressed a memorandum to Ralph M. Hartman, Director of the Department's Office of Worker Compensation Programs, regarding enforcement of the claim. Noting Freeman's untimely mailing of its rejection of the Memorandum of Conference and that "[t]he Responsible Operator did not subsequently respond to the Award of Benefits," Shire requested that proceedings be instituted to compel Freeman to pay benefits. The record contains no trace of any Labor Department action in response to Shire's request, but early in 1982 Freeman requested that liability for payments be shifted to the Trust Fund. The Deputy Commissioner denied the requested transfer of liability on March 8, 1982, and Freeman failed to appeal this determination.

It would be four years until the Labor Department would return to the question of the disposition of Doty's claim. Francis A. DeMarino, Deputy Associate Director of the Office of Workers' Compensation Programs, Division of Coal Mine Workers' Compensation, sent a memorandum to Robert A. Mitchell, the Deputy Commissioner in the Division of Coal Mine Workers' Compensation, on October 31, 1985. The memorandum failed to acknowledge Shire's 1981 memorandum and stated:

"A Memorandum of Conference was issued to Harry A. Treadwell c/o Louis R. Hedgeman of Freeman United Coal Mine Company in Chicago, instead of di-

---

**5.** "Each party shall, in writing, either accept or reject, in whole or in part, the deputy commissioner's recommendation, stating the reasons for such rejection. If no reply is received within 30 days from the date on which the recommendation was sent to parties, the recommendation shall be deemed accepted."

**6.** The Labor Department regulations provide that:
"Within 30 days after the date of issuance of a proposed decision and order, any party may, in writing, request a revision of the proposed decision and order or a hearing. If a hearing is requested, the deputy commissioner shall refer the claim to the Office of Administrative Law Judges (see § 725.421)."

20 C.F.R. § 725.419(a). The regulations further provide that:
"If no response to a proposed decision and order is sent to the deputy commissioner within the period described in paragraph (a) of this section [reproduced above] ... the proposed decision and order shall become a final decision and order, which is effective upon the expiration of the applicable 30-day period. Once a proposed decision and order ... becomes final and effective, all rights to further proceedings with respect to the claim shall be considered waived, except as provided in § 725.310 [providing for modification of awards and denials on 'grounds of a changing condition or because of a mistake in a determination of fact']."
20 C.F.R. § 725.419(d).

rectly to Mr. Treadwell at P.O. Box 100 Frankfort, Il. This document, which was received in [C]hicago on May 19, 1980, was responded to on June 26, 1980. Because of the delayed response a proposed Decision and Order was issued July 11, 1980.

"Experience with this particular responsible operation suggests that the failure to respond within 30 days is a rare occurrence and the Proposed Decision and Order should have been held in abeyance until the cause for the delay was determined. There is no evidence in the file to establish if and when the Proposed Decision and Order was received by the Interested Parties.

"In March of 82, in the process of resolving the issue of 'Transfer of Liability', Claims Examiner Rosemary Kress suggested referral to an Administrative Law Judge would appear to be the more appropriate action rather than referral for enforcement. Apparently the designated responsible operator anticipated that the claim was to be submitted to an Administrative Law Judge for a medical examination of the miner was scheduled and the report of finding forwarded to the file.[7]

"Unless you have evidence to the contrary, we are returning the claim for referral to the Office of the Administrative Law Judge."

Even though the record reveals no request from either party for a formal hearing, the case was referred to the Office of Administrative Law Judges. The first notice Doty received to the effect that the benefits awarded to him July 11, 1980, were in jeopardy came in a letter dated November 20, 1985:

"Dear Mr. Doty:

"It has been several years since your claim has been reviewed. Our efforts to enforce your July 11, 1980 Award of Benefits has been dismissed with the recommendation that your claim be forward-

ed to the Office of Administrative Law Judges for a hearing decision.

\*　　\*　　\*　　\*　　\*　　\*

"If you have not obtained the services of an attorney as yet, you should think about it in order to protect your rights in this matter...."

Doty received a second letter dated April 7, 1986 that stated:

"Your claim under the Black Lung Benefits Act is being referred to the Office of Administrative Law Judges for a formal hearing. This hearing will be to resolve the contested issues concerning your entitlement to black lung benefits.

\*　　\*　　\*　　\*　　\*　　\*

"It may be advisable for you to obtain the services of a qualified representative to be certain your interests are fully protected at the hearing. You should be certain your representative receives copies of the evidence. You must submit a signed statement to the U.S. Department of Labor authorizing the representative you choose to act on your behalf."

In November, 1986 an attorney entered his appearance on behalf of Doty for the first time regarding this claim. On May 15, 1987, Doty's newly retained attorney notified the ALJ that the claimant desired to raise the issue of whether the employer's appeal from the award of benefits should be dismissed for lack of jurisdiction:

"[T]he record reflects that the Notice of Initial Finding ... was issued on March 27, 1979, but the Employer's controversion was not filed until May 1, 1979 ... and thus was not filed within the 30–day period.

"Secondly, the memo of the informal conference ... was issued on May 16, 1980, but the Employer's response was not filed until June 26, 1980 ... and thus was also outside the 30–day period.

"The record fails to show any appeal taken by the Employer from the Award of Benefits entered on July 11, 1980.

---

7. It is unclear why DeMarino thought that Rosemary Kress had suggested referral to an ALJ. The record documents signed by Ms. Kress re-

late to a denial of transfer of liability from Freeman to the Black Lung Trust Fund only.

"For these reasons, it is the Claimant's position that you are without jurisdiction to consider the Employer's appeal on this matter in as much as controversion and the objection to the informal conference were not timely filed and no proper notice of appeal was ever taken from the ultimate award of benefits in this case. For that reason, Claimant believes this [pur]ported appeal should be dismissed."

In response to Doty's challenge to timeliness and Freeman's failure to appeal the July 11, 1980 Award of Benefits, counsel for Freeman submitted a letter dated July 22, 1980, to the ALJ that they argue should be considered as an appeal of the award. The ALJ apparently believed that Freeman submitted this alleged letter of appeal on the date contained therein, but that the Deputy Commissioner merely neglected to file the purported appeal in the record.

On May 27, 1987, the Administrative Law Judge issued a decision denying the motion to dismiss on the ground that he lacked authority to address the timeliness issues and that Doty had waived them by not bringing them to the Board's attention in a timely fashion:

"Review of current, applicable law reveals that a determination of the presence or absence of good cause for tardy Employer filings and responses and the effect of no Employer response are matters solely and properly within the province of the Deputy Commissioner. More than one (1) Administrative Law Judge has been humbled and chastised by the Board for treading on the Deputy Commissioner's turf by finding good cause for late Controversion filing or for untimely submissions. [Citations omitted]. The Board has also consistently held that appeal from the determinations, or even the lack thereof, of the Deputy Commissioner is directly to the Board and that the Board alone has the authority to remand a case to the Deputy Commissioner for the purpose of making formal findings of good cause or the consequences of a failure to respond. Therefore, a Claimant's remedy is to take his case to the Board and, if he fails so to proceed in a timely fashion, he waives all procedural defects and defaults."

Although the ALJ concluded that he lacked the authority to resolve questions related to the timeliness of the employer's filings, he went on to make the following comments regarding the processing of the case:

"In this case it is clear that the Deputy Commissioner directly caused Employer's untimely response to the Report of Informal Conference by forwarding the report to an office not occupied by Counsel who represented Employer at the Informal Conference. Error was heaped upon error when the Deputy Commissioner failed to include as a proposed Director's Exhibit Employer's most prompt reply to the proposed Decision and Order. At least one of these errors has been conceded. Good cause was found for the delay in answering the report of Informal Conference [citing memo from DeMarino to Mitchell reproduced *supra*]. Certainly the omitted response to the proposed Decision and Order is admissible in evidence at the [sic] when offered at the Hearing. All that remains unaddressed then is the tardiness, by three (3) days, in the filing of Employer's Controversion and the Deputy Commissioner's failure formally to find good cause therefor, though he did proceed with further case development. The significance, if any, of this defect should have been determined by the Board through Claimant's appeal. Since none was pursued, it is deemed waived."

Following the rejection of Doty's motion to dismiss, a hearing was held and the Administrative Law Judge issued a decision denying benefits. Because Doty filed his application for benefits prior to the March 31, 1980, effective date of the Labor Department's Part 718 regulations, the ALJ analyzed his claim under the Labor Department's Part 727 regulations. After determining that the interim presumption was properly invoked, the Administrative Law Judge went on to examine whether the interim presumption could be rebutted. 20 C.F.R. § 727.203(b) provides for four

possible methods of rebutting the interim presumption, and reads in relevant part:

"The presumption in paragraph (a) of this section shall be rebutted if:

"(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work ...; or

"(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or

"(3) The evidence establishes that the total disability or death of the miner does not arise in whole or in part out of coal mine employment; or

"(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis."

Because the Administrative Law Judge concluded that Freeman rebutted the interim presumption under 20 C.F.R. § 727.203(b)(3), he denied Doty's claim for benefits.

Doty appealed the Administrative Law Judge's denial of benefits to the Benefits Review Board. Although Doty presented argument on both the jurisdictional issues and the substantive merits, the Board found the substantive questions dispositive. The Board reversed the Administrative Law Judge's conclusion that Freeman had rebutted the interim presumption of disability due to pneumoconiosis under 20 C.F.R. § 727.203(b)(3), holding:

"Because this case arises within the jurisdiction of the United States Court of Appeals for the Seventh Circuit, the party opposing entitlement must show that pneumoconiosis was not a contributing cause of claimant's total disability in order to rebut the interim presumption pursuant to subsection (b)(3). *Wetherill v. Director, OWCP,* 812 F.2d 376 ... (7th Cir.1987). Dr. Myers' conclusions regarding claimant are as follows:

'This man's silicosis results from his entire exposure history and is permanent. He should avoid further dust exposure. His main limiting factor at present appears to be his angina.'"

Claimant's Exhibit 1.

"Dr. Myers' opinion is insufficient as a matter of law to establish rebuttal under subsection (b)(3) pursuant to the standards set forth in *Wetherill, supra,* as it does not establish that claimant's pneumoconiosis does not contribute to his total disability. Because the administrative law judge reasonably accorded greater weight to Dr. Myers' opinion, and that opinion is insufficient to establish rebuttal at subsection (b)(3), we vacate the administrative law judge's rebuttal findings under subsection (b)(3) and reverse the denial of benefits."

In light of its determination of the substantive issue, the Board did not find it necessary to determine the question of whether the employer had taken the required steps to vest the ALJ with jurisdiction over its challenge to Doty's award of benefits because the employer would have lost on the merits regardless of whether the Administrative Law Judge had jurisdiction.

## II. ISSUES PRESENTED

This appeal presents two issues: (1) Did the Administrative Law Judge have jurisdiction over Freeman's challenge to the Deputy Commissioner's award of black lung benefits to Doty; (2) Did the Administrative Law Judge properly deny black lung benefits to Doty on the ground that Freeman had rebutted the interim presumption of disability due to pneumoconiosis under 20 C.F.R. § 727.203(b)(3). Since we base our decision on waiver and jurisdictional grounds, we decline to address the rebuttal issue.

## III. STANDARD OF REVIEW

In *Peabody Coal Co. v. Helms,* 859 F.2d 486, 489 (7th Cir.1988), we set forth the standards applicable to review of a decision awarding or denying black lung benefits:

"Although this appeal is from a decision of the [Benefits Review] Board, we review the judgment of the ALJ. Our review is limited to whether the decision of the ALJ is supported by substantial evidence, is in accord with the law, and is rational. Substantial evidence is 'such

relevant evidence as a rational mind might accept as adequate to support a conclusion.'"

(citations omitted) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). When we confront a case where the Benefits Review Board has reversed an ALJ's determination, we have emphasized that it is the Administrative Law Judge's decision we review to determine whether it is "supported by substantial evidence, in accord with the law, and not irrational. If it is, the Board's decision must be reversed, even if it is also supported by substantial evidence." *Amax Coal Co. v. Burns,* 855 F.2d 499, 501 (7th Cir.1988) (citations omitted).

## IV. THE ADMINISTRATIVE LAW JUDGE'S JURISDICTION

Doty claims that the Administrative Law Judge lacked jurisdiction over this matter [8] as a result of Freeman's failure to file a written rejection of the Deputy Commissioner's recommendation within 30 days of the date the recommendation contained in the Memorandum of Informal Conference was sent to the parties as required in 20 C.F.R. § 725.417(d); and Freeman's alleged failure to request a hearing before the Office of Administrative Law Judges within 30 days of the issuance of the Deputy Commissioner's proposed decision pursuant to 20 C.F.R. § 725.419.[9]

### A. The ALJ's Jurisdiction over the Appeal

It is axiomatic that there must be an appeal in order to invoke the jurisdiction of an appellate court. Furthermore, appeals must be timely. *Cf. Young Radiator Co. v. Celotex Corp.,* 881 F.2d 1408 (7th Cir.1989). In this case the Administrative Law Judge was acting in an appellate capacity, and we are aware of no rule allowing review of agency action without a timely appeal in administrative proceedings absent statutory or regulatory language creating an exception.[10]

The record manifests no appeal from the July 11, 1980, proposed decision and order of the Acting Deputy Commissioner. We are at a loss to understand why the Deputy Commissioner referred the claim to the Office of Administrative Judges in the absence of proof of the filing of an appeal in the record. We see no reason for a referral to be made some five years after the award in light of the fact that there was no evidence in the record that either party requested a hearing. 20 C.F.R. § 725.419 states:

"(a) Within 30 days after the date of issuance of a proposed decision and order, any party may, in writing, request a revision of the proposed decision and order or a hearing. If a hearing is request-

---

**8.** Freeman argues that Doty waived the jurisdictional argument by failing to raise it until 1987. In view of the fact that Doty was under the impression that his benefits were awarded permanently in 1980, he did not receive notice that the benefits were in jeopardy until November 20, 1985, and he never retained counsel to represent him until November 3, 1986, it is not surprising that he waited until 1987 to raise the jurisdictional issue. We would hardly expect a coal miner with a eighth-grade education to realize that he had a jurisdictional argument that he could raise.

**9.** Doty also challenges jurisdiction on two other grounds. He argues that the Operator Response to the Notice of Initial Finding was outside the 30-day limit set forth in 20 C.F.R. § 925.413(a), but as the Response was within the 7-day extension provided for mailed filings (20 C.F.R. § 725.311(c)), it was timely. Additionally, Doty contests jurisdiction on the basis of Freeman's failure to appeal the 1982 denial of its request to

shift responsibility for Doty's claim from Freeman to the Black Lung Trust Fund. Since this issue is raised for the first time on appeal, we decline to address it.

**10.** The language in 20 C.F.R. § 725.413(a) authorizing the Deputy Commissioner to extend the time period "for good cause shown, or in the interest of justice" is an example of such an exception. Thus, it is evident that not every procedural default deprives the Deputy Commissioner or the ALJ of jurisdiction to proceed, for some defaults may be deemed to be excusable. Objections to procedural errors that the Deputy Commissioner (or the ALJ) have discretion to excuse may be waived. *See Peabody Coal Co. v. Shonk,* 906 F.2d 264, 272 n. 11 (7th Cir.1990) (Peabody Coal waived argument of abandonment under 20 C.F.R. § 725.410, which allows Deputy Commissioner to extend time for submitting new evidence or requesting hearing "for good cause shown.").

ed, the deputy commissioner shall refer the claim to the Office of Administrative Law Judges...."

\*　　\*　　\*　　\*　　\*　　\*

"(d) If no response to a proposed decision and order is sent to the deputy commissioner within the period described in paragraph (a) of this section ... the proposed decision and order shall become a final decision and order, which is effective upon the expiration of the applicable 30–day period. Once a proposed decision and order or revised proposed decision and order becomes final and effective, *all rights to further proceedings with respect to the claim shall be considered waived,* except as provided in § 725.310 [change in conditions or mistake in determination of fact]."

(Emphasis added). In response to Doty's challenge to the ALJ's jurisdiction, Freeman submitted a letter dated July 22, 1980, to the ALJ that they allege is an appeal sent by certified mail in a timely manner. But Freeman failed to present any type of documentary evidence, including a certified mail receipt, as proof of mailing and/or receipt of the letter, and since the letter was not in the record, it was incumbent upon the Administrative Law Judge to determine whether the letter of appeal was timely submitted. This the ALJ failed to do. How one might determine that a notice of appeal was submitted in a timely fashion nearly seven years after the fact is indeed most questionable, but the very circumstance of the seven-year time span militates against assuming that the appeal was timely. Moreover, Doty unequivocally denies receiving a copy of the notice as required under 20 C.F.R. § 725.419(b); on its face the letter fails to reveal that a copy was sent to Doty; and the Donald Shire memo of October 20, 1981, mentioned above, stated that there was no appeal. While we are in no position to make a finding of fact regarding whether Freeman submitted its appeal July 22, 1980, we view the ALJ's apparently unquestioning acceptance of the letter as evidence of a timely appeal with a great deal of skepticism. In view of Freeman's other untimely filing in this case, however, we need not remand to the ALJ for further findings.

 Even if Freeman's alleged appeal of the July 11, 1980, proposed decision and order were timely, the Administrative Law Judge would still have lacked jurisdiction as a result of the untimely response to the Deputy Commissioner's recommendation following the informal conference. According to Donald Shire's October 20, 1981, memorandum, Freeman received the Memorandum of Conference on May 19, 1980, but neglected to respond until June 26, 1980. 20 C.F.R. § 725.417(d) states:

"Each party shall, in writing, either accept or reject, in whole or in part, the deputy commissioner's recommendation, stating the reasons for such rejection. *If no reply is received within 30 days from the date on which the recommendation was sent to parties, the recommendation shall be deemed accepted."*

(Emphasis added). In Shire's memo requesting enforcement of the liability against Freeman, he noted Freeman's untimely response and stated "[a]n Award of Benefits was therefore issued on July 11, 1980 as Freeman United did not timely respond to the Memorandum of Conference." Freeman's excuse for its late response was that the Memorandum of Conference was mistakenly mailed to its attorney (who signed the Operator Response form and who is still representing Freeman on appeal) rather than to the employee who attended the conference. The Administrative Law Judge stated that "it is clear that the Deputy Commissioner directly caused Employer's untimely response to the Report of Informal Conference by forwarding the report to an office not occupied by Counsel who represented Employer at the Informal Conference." This statement is the equivalent of a finding of "good cause shown" under 20 C.F.R. § 725.413(a). The problem with such a finding is that there is no such exception under § 725.417(d). Thus, neither the ALJ nor the Deputy Commissioner possessed discretion to extend the 30–day time period for rejecting the recommendation absent a finding that Freeman did not receive notice. In this case, Freeman undoubtedly received notice,

and the letter responding to the Memorandum of Conference was signed by Freeman's attorneys located at the same address to which the Memorandum was mailed. Thus, we hold that Freeman's argument is somewhat less than forthright, and we deem the Deputy Commissioner's recommendation to have been accepted by Freeman at the expiration of the 30–day period for rejection. Therefore, the ALJ was without jurisdiction to reconsider that recommendation.

B. The ALJ's Jurisdiction to Decide Whether There Is "Good Cause Shown" under 20 C.F.R. § 725.413(a)

The Administrative Law Judge, in rejecting Doty's challenge to his jurisdiction, relied upon *Saylor v. Warner Coal Co. and Old Republic Co.*, 7 BLR 1–761 (1985), (among other Benefits Review Board cases) for the proposition that he was without jurisdiction to consider whether Freeman had good cause for the untimely response to the Notice of Initial Finding. The ALJ correctly interpreted *Saylor*, but the Sixth Circuit subsequently reversed *Saylor* and another case in which the Benefits Review Board held that the ALJ was without jurisdiction to make a determination of "good cause shown" in *Pyro Mining Co. v. Slaton*, 879 F.2d 187, 189 (6th Cir.1989). We agree with the Sixth Circuit that 20 C.F.R. § 725.455 provides that "a hearing before the administrative law judge is to be a *de novo* proceeding because the section specifies that 'any findings or determinations made with respect to a claim by a deputy commissioner shall not be considered by the administrative law judge.'" *Id.* at 190. When a party places "good cause" in issue, we believe the ALJ must be able to address it in order to conduct a *de novo* review pursuant to § 725.455.

The Administrative Law Judge held that Doty's remedy for addressing the "good cause" issue was a direct appeal to the Benefits Review Board, and failure to pursue that remedy constitutes a waiver of the argument. We disagree. Initially, we note that the ALJ's holding would require a claimant to take an appeal to the Benefits Review Board for the Deputy Commissioner's non-action. How is a coal miner claimant, unrepresented by counsel, to know at what point the Deputy Commissioner's failure to make a determination of "good cause" requires an appeal? Requiring an appeal before an ultimate determination of liability is made would violate the general judicial policy against allowing interlocutory appeals. Secondly, proceedings before the Deputy Commissioner are structured informally so a claimant can assert his claim without the aid of an attorney. How could we expect a coal miner with an eighth grade education and no counsel, such as Doty, to avoid technical pitfalls of waiver such as the one posed by the ALJ? Administrative proceedings simply do not require the formality expected in federal litigation. *See Eifler v. OWCP*, 926 F.2d 663, 667 (7th Cir.1991). We hold that Doty's failure to raise Freeman's non-compliance with the timeliness requirements of the regulations at issue prior to consideration of the case by the ALJ may not be deemed a waiver. While the issue of Freeman's non-compliance with the regulations could have been raised earlier, we do not believe Doty should have been required to raise it prior to the hearing before the ALJ.

## V. CONCLUSION

We hold that the Administrative Law Judge was without jurisdiction to consider Freeman's liability and that Doty's failure to raise the jurisdictional issue prior to the proceedings before the ALJ did not constitute waiver. Thus, the decision of the Benefits Review Board is

AFFIRMED.